UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CAROL A. WOLF and EDWARD L. WOLF, Individually, and as Administrators Ad Prosequendum of the Estate of Brian Wolf, deceased, and KEVIN HOLMES, | : : : | Hon. Joseph H. Rodriguez<br><br>Civil Action No. 10-2860 |
| Plaintiffs, | : | OPINION |
| v. | : | |
| TICO TRAVEL, BOB MARRIOTT'S FLYFISHING STORE d/b/a/ BOB MARRIOTT'S TRAVEL CENTER[1], CASA MAR FISHING CLUB S.A., CASA MAR LODGE DEL CARIBE D&M S.A., and B.O.G. DEL MAR S.A., | : : : | |
| Defendants. | : | |

This matter is before the Court on a motion for summary judgment filed by Defendant Piscatory, Inc. d/b/a Bob Marriott's Flyfishing Store ("Bob Marriott's"), and a motion for judgment on the pleadings filed by Defendant Tico Travel. Oral argument on the motions was heard November 15, 2011, and the record of that proceeding is incorporated here. For the reasons expressed on the record that day, and those set forth below, both motions will be granted.

**Factual Background**

On June 2, 2007, New Jersey citizens Brian Wolf and Kevin Holmes were among eleven members of the Cutty Sharks Fishing Club who traveled to Costa Rica on a fishing expedition. The group booked their trip through Florida retail travel agent Tico Travel, which made international air travel arrangements and used California booking agent

---

[1]This Defendant asserts that the proper entity sued is Piscatory, Inc. d/b/a Bob Marriott's Fly Fishing Store.

Bob Marriott's to arrange for domestic air, travel, lodging, and fishing. Bob Marriott's booked the fishermen in the Casa Mar Lodge Del Caribe in Costa Rica. Travel packages to Casa Mar Lodge were all-inclusive and consisted of boat transfers from the airport, food, lodging, guided fishing, with boats and captains provided by Casa Mar Lodge. (Bounous Dec. ¶ 7.)

On June 7, 2007, Wolf and Holmes, first cousins, went out on the boat Don Coto operated by fishing guide and boat captain Pedro Antonio Cajina. They apparently were unaware that the local Coast Guard had issued a warning to the effect that fishing guides should not take patrons out that day due to the turbulent and choppy condition of the water. At some point, the Don Coto capsized. While Holmes was able to swim to shore, Wolf did not survive. His body was found three days later, and his cause of death was determined to be asphyxia by submergence.

On June 4, 2010, Wolf's parents and Holmes filed suit in this Court. In Count I, they allege negligence by Tico Travel and Bob Marriott's. Count II asserts a negligence claim against Casa Mar. In Count III, Wolf's parents assert a wrongful death claim against all Defendants, and in Count IV, they claim rights of survival. In Count V, Holmes states a claim for negligent infliction of emotional distress. Plaintiffs contend they are entitled to punitive damages in Count VI.

## Jurisdiction

Jurisdiction over this civil action originally was premised upon 28 U.S.C. § 1333(1), "since plaintiffs' claims arise from an admiralty or maritime tort." (Compl. ¶ 12.)

**Standard on Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings. The movant under Rule 12(c) must show clearly that no material issue of fact exists and that it is entitled to judgment as a matter of law. Rosenau v. Uniford Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 29091 (3d Cir. 1988)). A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). Turbe v. Government of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Fed. R. Civ. P. 8(a)(2). While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. Phillips, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986)); accord Fed. R. Civ. P. 56(a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c) (1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to

withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256–57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## Discussion

Counts I & III - DOHSA

In Count I, Plaintiffs allege negligence by Tico Travel and Bob Marriott's. Insofar as this negligence claim is premised upon New Jersey law, it is barred by the applicable two-year statute of limitations. N.J. Stat. Ann. § 2A:14-2. Although the Complaint invokes general maritime law, the Death on the High Seas Act, 46 U.S.C. § 30301

provides the exclusive remedy to Wolf's parents.  See Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207 (1986) (where death occurs on the high seas, DOHSA is the exclusive remedy).  Pursuant to the Act,

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 U.S.C. § 30302.  There is no dispute in this case that Wolf's death occurred on the high seas, more than three nautical miles from the United States.[2]  As such, any claim of negligence brought under general maritime law is preempted by DOHSA, so this claim survives only to the extent that it seeks damages for pecuniary loss under DOHSA.[3]

In Count III, Wolf's parents assert a wrongful death claim against all Defendants. Again, insofar as this claim is premised upon New Jersey law, it is barred by the applicable two-year statute of limitations, N.J. Stat. Ann. § 2A:31-3, and although the Complaint invokes general maritime law, DOHSA provides the exclusive remedy in this instance.  See Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 233 (1986) (where

---

[2]The distance from the shore of Costa Rica is of no consequence.  Howard v. Crystal Cruises, Inc., 41 F.3d 527, 529-30 (9th Cir. 1994).

[3]Bob Marriott's has further argued that the claim against it of "negligent selection" of the Lodge does not meet the requirements of Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249 (1972), because the incident in question (1) did not occur on navigable waters, and (2) bears no relationship to maritime activity.  Because DOHSA applies, however, the Court need not go through an Executive Jet analysis.  409 U.S. at 274 n.26 and 271 n.20 (stating that the nexus requirement only applies in the absence of a statute to the contrary, DOHSA is such a statute); Palischak v. Allied Signal Aerospace Co., 893 F. Supp. 341, 345 (D.N.J. 1995 ) (citing Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207 (1986) for making clear that admiralty jurisdiction is expressly provided under DOHSA whenever the accidental death occurred more than a maritime league off shore).

death occurs on the high seas, DOHSA is the exclusive remedy).  Thus, any claim for wrongful death asserted here is preempted by DOHSA.  <u>Palischak v. Allied Signal Aerospace Co.</u>, 893 F. Supp. 341, 346 (D.N.J. 1995); <u>see</u> also <u>Calhoun v. Yamaha Motor Corp.</u>, 40 F.3d 622, 634-35 (3d Cir. 1994) (noting that Congress had spoken directly to the question of damages for deaths on the high seas in DOHSA, and the Court was not free to supplement the statutory scheme with a State law remedy).  Therefore, this claim survives only to the extent that it seeks damages for pecuniary loss under DOHSA.

      The Court notes at this juncture that Counts I and III actually state just one claim under DOHSA.  That is, under DOHSA, there is no claim of general negligence separate from the claim of wrongful death.  Regarding the surviving DOHSA claim, Bob Marriott's argues that its alleged wrongful act, neglect, or default did not occur on the high seas, as required by the statute.  That is, Bob Marriott's role as a travel agent located in California, in making and confirming a reservation for the fishing club at the Defendant Lodge, should not subject it to liability under DOHSA.

      Plaintiffs have argued, in opposing these motions, that the boat Wolf and Holmes went out on was not properly registered, inspected, licensed, or certified.  The boat did not have life jackets.  The captain was not properly licensed, registered, certified, or trained.  Plaintiffs further argue that Bob Marriott's held itself out to be knowledgeable and experienced in Costa Rica fishing, and described the Casa Mar Lodge as an "ultimate destination pick" with top of the line equipment and gear, knowledgeable guides, and "unsinkable" boats.  Plaintiffs charge Bob Marriott's with actual or constructive knowledge of the condition of the boats, lack of readily-available life jackets, and lack of qualifications of the captains.

Generally, tour operators and travel agents are not liable for the acts or omissions of independent suppliers of services to tours because they have no control over such independent entities.  See Abramson v. Ritz-Carlton Hotel Co., LLC, Civ. No. 09-3264, 2010 WL 3943666, *6 (D.N.J. Oct. 6, 2010) (holding that a travel agent is not an insurer of a tour participant's safety); Yurchak v. Atkinson & Mullen Travel, Inc., 207 Fed. Appx. 181, 184 (3d Cir. 2006) (affirming the dismissal of negligence claims brought against a travel agent by a plaintiff injured on a jet ski in Mexico because the travel agent did not book the jet ski excursion and did not own or control the jet ski company).  Further, although a travel agent who arranges vacation plans is regarded as a special agent of the customer, Abramson, 2010 WL 3943666, *3, that travel agent "is not an insurer, nor can he be reasonably expected to divine and forewarn of an innumerable litany of tragedies and dangers inherent in foreign travel."  Id. at *4 (quoting Schwartz v. Hilton Hotels Corp., 639 F. Supp. 2d 467, 474 (D.N.J. 2009).

Plaintiffs note that Bob Marriott's booked the fishing trip expressly including boats and boat captains.  The record is clear, however, that although Bob Marriott's billed the fishermen for the trip, Casa Mar provided an all-inclusive experience in Costa Rica.  Nothing in this record indicates that either travel agent owned, operated, managed, or controlled the Defendant Lodge, its boats, or its employees.  See Gill Dep., p. 116-17.  In addition, there is no evidence that indicates either travel agent knew or had reason to know of any unsafe conditions.  In fact, Bob Marriot's Travel Center Manager has submitted a Declaration stating that from the early 1980's until June 7, 2007, Bob Marriott's used the services of the Lodge without any incident, and had received no customer complaints regarding safety issues.  (Bounous Dec. ¶ 11-14.)

8

Thus, based on the record before the Court, there is no indication that either Bob Marriott's or Tico Travel failed to exercise good faith or reasonable skill, care, or diligence in making the travel plans in this case. Accordingly, summary judgment will be granted in favor of the moving Defendants on the DOHSA claim.

In briefing opposing the instant motions, Plaintiffs mention for the first time invoking the law of Costa Rica. 46 U.S.C. § 30306 provides:

> When a cause of action exists under the law of a foreign country for death by wrongful act, neglect, or default on the high seas, a civil action in admiralty may be brought in a court of the United States based on the foreign cause of action, without abatement of the amount for which recovery is authorized.

This section of DOHSA, formerly 46 U.S.C. § 764, was enacted to prevent "the owners of foreign vessels" from taking "advantage of U.S. statutes limiting their liability." Dooley v. Korean Air Lines Co., Ltd., 117 F.3d 1477, 1484 (D.C. Cir. 1997), aff'd 524 U.S. 116 (1998).

> However, "Section 764 and foreign law play no role once a court determines that U.S. law governs an action." Id. at 1485. Permitting Plaintiff to supplement DOHSA claims with claims under [Costa Rican] law would impermissibly "allow [the plaintiff] to combine the most favorable elements of U.S. law . . . and . . . any other nation's law," which would have the effect of letting plaintiffs "assemble the most favorable package of rights against the defendant." Id. at 1484–85. The United States Supreme Court has already affirmed that this is contrary to the purposes of DOHSA, and is not permissible. Dooley, 524 U.S. 116 (1998).

Balachander v. NCL (Bahamas) Ltd., — F. Supp. 2d —, 2011 WL 3439931, *4 (S.D. Fla. Aug. 5, 2011).[4] Thus, the Court will not consider the application of Costa Rican law.

---

[4]Further, section 30306 arguably is not applicable because Plaintiffs have not pled a cause of action under foreign law. See Fed. R. Civ. P. 44.1 (a party who intends to raise an issue of foreign law shall give reasonable notice thereof by a pleading or other writing).

9

Count IV - Survival

In Count IV, Wolf's parents claim rights of survival against all Defendants. DOHSA does not include a survival provision authorizing recovery for pain and suffering before death.  Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 215 n.1 (1986); Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 626 (1978).  Further, DOHSA precludes any general maritime survival action.  Dooley v. Korean Air Lines Co., Ltd., 524 U.S. 116, 123-24 (1998) ("By authorizing only certain surviving relatives to recover damages, and by limiting damages to the pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for deaths that occur on the high seas.").  In addition, although Plaintiffs may have been able to supplement their DOHSA claim with a claim under the New Jersey Survival Act, see Palischak v. Allied Signal Aerospace Co., 893 F. Supp. 341, 346 (D.N.J. 1995), they did not do so within the applicable two-year statute of limitations, N.J. Stat. Ann. § 2A:15-3, so any such supplemental claim is time-barred. Count IV will be dismissed.

Count V - Negligence

In Count V, Holmes states a claim against all Defendants for negligent infliction of emotional distress.[5]  Insofar as this claim is premised upon New Jersey law, it is barred by the applicable two-year statute of limitations.  N.J. Stat. Ann. § 2A:14-2. Plaintiffs assert that this claim has been properly brought under admiralty and maritime law "since the effects of [Defendants'] negligence and recklessness occurred on the high

---

[5]Tico Travel does not address this claim, but Bob Marriott's does.  At oral argument, however, Tico Travel expressly joined in the arguments of Bob Marriott's, with the exception of Bob Marriot's argument that DOHSA does not apply here.

10

seas." (Pl. Br. at Dkt. No. [60], p. 12; accord Pl. Br. at Dkt. No. [51], p. 2.)  Regarding Holmes' claim, then, the Court must determine whether this negligent infliction of emotional distress claim is viable as against a travel agent under general maritime law.

The test for admiralty tort jurisdiction requires that an incident (1) occur on navigable waters[6]; (2) bear a substantial relationship to traditional maritime activity; and (3) have a potentially disruptive impact on maritime commerce.  Sisson v. Ruby, 497 U.S. 358, 363-64 (1990).  See also Grubart v. Great Lakes Dredge & Dock Co., 513 U.S. 527 (1995); Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 131-32 (3d Cir. 2002).  The elements of a maritime negligence cause of action include: (1) the existence of a duty required by law which obliges the person to conform to a certain standard of conduct in order to protect others against unreasonable risks; (2) a breach of that duty by engaging in conduct that falls below the applicable standard or norm; (3) a reasonably close causal connection between the offending conduct and the resulting injury (proximate cause); and (4) actual loss, injury, or damage suffered by the plaintiff.  Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 5-2 (5th ed. 2011).

As discussed above, there is no record evidence that either travel agent breached its reasonable duty of care in booking the trip at issue in this case.  Ordinarily, the proper defendant in a passenger case is the shipowner or operator, not brokers or agents

---

[6] Bob Marriott's points out that case law provides "maritime law governs only those torts occurring on the navigable waters of the United States," Victory Carriers, Inc. v. Law, 404 U.S. 202, 205 (1971).  Generally accepted principles of public international law, however, provide for a twelve-mile territorial sea and an additional twelve-mile contiguous zone.  Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 2-14 & 15; § 8-2 (5th ed. 2011).  As no party has adequately briefed the locality aspect of the claims at issue, for purposes of these motions, the Court assumes that it has general maritime or admiralty jurisdiction.

who issue the tickets.  Bowns v. Royal Viking Lines, Inc., 1977 AMC 2159 (S.D.N.Y. 1977); Haffel v. United States Lines Co., 114 F. Supp. 443 (S.D.N.Y. 1953).  The heart of this negligence case will turn on whether the vessel owner or operator had actual or constructive notice of the condition(s) causing the injuries alleged.  See, e.g., Everett v. Carnival Cruise Lines, 912 F.2d 1355 (11th Cir. 1990); Wilkinson v. Carnival Cruise Lines, Inc. 920 F.2d 1560 (11th Cir. 1991); Monteleone v. Bahama Cruise Line, Inc., 838 F.2d 63 (2d Cir. 1988).  See also Wyler v. Holland America Line, 348 F. Supp. 1206 (W.D. Wash. 2003) (whether severe weather conditions created foreseeable risks to passengers injured when a "rogue wave" hit the vessel).

Count VI - Punitive Damages

Plaintiffs contend they are entitled to punitive damages from all Defendants in Count VI.  Punitive damages are available under general maritime law.  Atlantic Sounding Co., Inc. v. Townsend, 129 S. Ct. 2561, 2567 (2009).  DOHSA does not permit the recovery of punitive damages, however, as recovery is limited to pecuniary damages.  Miles v. Appex Marine Corp., 498 U.S. 19, 31 (1990).  See also Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625 (1978) ("Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements.").  Therefore, punitive damages are not available to Wolf's parents, but would be available to Holmes if his claim against the moving Defendants survived these motions, which it did not.  The Court makes no determination at this time regarding Kevin Holmes' claim for punitive damages as brought against the non-moving Defendants.[7]

---

[7]Similarly, the Court makes no judgment regarding Count II, which was brought against the non-moving Defendants only.

## Conclusion

For these reasons, as well as those expressed on the record November 15, 2011, the motion for summary judgment filed by Defendant Piscatory, Inc. d/b/a Bob Marriott's Flyfishing Store ("Bob Marriott's), and the motion for judgment on the pleadings filed by Defendant Tico Travel will both be granted.  An appropriate Order will issue this day.


Dated: November 28, 2011                              /s/ Joseph H. Rodriguez
                                                                    JOSEPH H. RODRIGUEZ
                                                                            U.S.D.J.